United States District Court

Eastern District of Louisiana

Maldonado

v.                                    CIVIL ACTION NO. 2:04-cv-02635 I (1)

Ochsner Clinic Fdn


The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

(1) A list of all parties still remaining in this action;

(2) Copies of all pleadings, including answers, filed by those parties in state court; and

(3) Copies of the return on service of process on those parties filed in state court.


New Orleans, Louisiana, September 24, 2004.


By Direction of the Court

LORETTA G. WHYTE, CLERK



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 SEP 22 PM 4: 21

LORETTA G. WHITE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**EILEEN MALDONADO,**
**DARRYL SOIGNET, SR. AND**
**CAROL VERLANDER EISWIRTH**

**CIVIL ACTION NO.**

# 04-2635

**versus**

**OCHSNER CLINIC FOUNDATION**
**and AMERICAN HOSPITAL ASSOCIATION**

**SECTION ""**
**JUDGE** SECT. | MAG. 1

**MAG. DIV.**
**MAGISTRATE**

## NOTICE OF REMOVAL

The Notice of Removal of defendants Ochsner Clinic Foundation ("Ochsner") and the American Hospital Association ("AHA"), removing this action from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, and to the extent required, reserving any and all rights, objections, defenses and exceptions, respectfully represents as follows:

## BACKGROUND

1.

This is the second suit filed against Ochsner and the AHA by the same plaintiffs and the same plaintiffs' counsel arising out of the same subject matter. The prior suit will be referred to "*Maldonado I.*" The present suit will be referred to as "*Maldonado II.*"

2.

Plaintiffs commenced the present suit, *Maldonado II*, on or about September 1, 2004. *Maldonado II* was brought in the 24th Judicial District Court for the Parish of Jefferson, State

{N1190629.1}

1

Fee $150
✓ Process
X Dktd
CtRmDep
Doc. No.

of Louisiana. *See "Eileen Maldonado, et al v. Ochsner Clinic Foundation and American Hospital Association,"* and given Case Number 611-450, Division J, by that court. A copy of the state court petition is attached as Exhibit A.

3.

*Maldonado II* has been brought by three individual Plaintiffs: Eileen Maldonado, Darryl Soignet, Sr. and Carol Verlander Eiswirth, who claim that they were uninsured patients treated at Ochsner. Ex. A at ¶¶ 27-38. They seek to bring the action against Ochsner and the AHA on behalf of a class consisting of "all persons who received any form of health care treatment and were charged an undiscounted amount for the services at Ochsner from September 1, 1994 . . . and who were uninsured at the time of treatment." *Id.* at ¶ 39.

4.

In *Maldonado II*, the Plaintiffs claim that Ochsner and the AHA have violated various obligations allegedly owed to uninsured patients. The following are examples of the allegations:

a.  Plaintiffs allege that Ochsner, "as a purported charitable entity under LSA-R.S. 47:287.501, 47:608 and the Louisiana Constitution Art. VII, Sec. 21, entered into express and/or implied Agreements with the State of Louisiana, that in return for substantial income, franchise, and property tax exemptions," Ochsner would "provide mutually affordable medical care" to uninsured patients. Ex. A at ¶ 52. Plaintiffs allege that Ochsner has not done this. *Id.* at 53.

b.  Plaintiffs contend that Ochsner overcharges uninsured patients by charging them more than is charged to "third party payers like Medicare and Medicaid." *Id.* at ¶ 14.

2

c.  Ochsner allegedly "grossly distort[s] the small amount of charity care it does provide to uninsured patients" in "reports filed with the Internal Revenue Service." *Id.* at ¶ 16.

d.  Plaintiffs contend that "before . . . Ochsner admits any patient, including its uninsured patients, into its hospitals and/or emergency rooms for emergency medical care, it requires its patients to sign a form contract promising to pay . . . Ochsner in full for unspecified and undocumented charges for medical care . . ." and that "Ochsner will not admit patients into its emergency rooms for emergency medical care unless and until that patient agrees to provide a deposit and agrees to pay Ochsner in full for such unspecified and undiscounted charges." *Id.* at ¶ 18.  *See also id.* at ¶¶ 11, 13, 18, 43(h), 54, 65, 80 and 88.

e.  Plaintiffs allege that the AHA "falsely represent[ed] to Secretary Thompson [that is, the Secretary of the United States Department of Health and Human Services] that Ochsner was required to charge and collect undiscounted rates for medical care" from uninsured individuals. *Id.* at ¶ 78.  Plaintiffs allege that these misrepresentations were contrary to "federal regulations," including "Medicare laws and regulations." *Id.* at ¶¶ 23 and 26.  *See also id.* at ¶¶ 25, 77, 84 and 85.

5.

Plaintiffs seek damages and injunctive relief in *Maldonado II* on the basis of third party breach of contract, breach of contract, breach of duty of good faith and fair dealing, the Louisiana Unfair Trade Practices Act, unjust enrichment, conspiracy and aiding and abetting. *Id.* at ¶¶ 51-93.

6.

Prior to filing the present action (*Maldonado II*), the same Plaintiffs' counsel, on behalf of the same three named Plaintiffs and a similar putative class, filed *Maldonado I* in this Court. *See* "*Eileen Maldonado, et al. v. Ochsner Clinic Foundation and American Hospital Association*," No. 04-1987 on the docket of the United States District Court for the Eastern District of Louisiana (Section F, the Honorable Martin L.C. Feldman presiding). The original complaint in the prior suit was filed on July 15, 2004, and an amended complaint was filed on July 30, 2004. A copy of the amended complaint is attached as Exhibit B.

7.

The only difference between *Maldonado I* and *Maldonado II* is that Plaintiffs purport to bring *Maldonado II* on the basis of Louisiana state claims only, whereas in *Maldonado I*, Plaintiffs asserted that their claims in controversy were deeply rooted in federal law. Plaintiffs acknowledged in *Maldonado I* that their claims were federal in nature because (1) an organization's tax exempt status is based on 26 U.S.C. §501(c)(3) and (2) allegations that emergency room treatment were conditioned on ability to pay is a claim under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §1395dd. Ex. B at ¶ 7.

8.

*Maldonado I* was one of 30-plus similar actions brought against nonprofit hospitals across the country. On July 22, 2004, shortly after *Maldonado I* was filed, the plaintiffs in some of the 30-plus cases filed a Motion to Transfer and Consolidate with the Judicial Panel on Multidistrict Litigation ("MDL Panel") requesting MDL consolidation of all of the cases, including *Maldonado I*. *See* Exhibit C. In the motion, plaintiffs' counsel stressed the federal

character of the claims against the various hospitals by noting that "[a]ll actions" are focused on the "tax-exempt status granted to not-for-profit hospitals by the United States Government" and the hospitals' breach of contractual agreements allegedly arising out of this tax-exempt status. *Id.* at ¶¶ 1-5.

9.

Ochsner filed a memorandum with the MDL Panel opposing the transfer and consolidation of *Maldonado I* on August 2, 2004. *See* Exhibit D.

10.

Plaintiffs' counsel in *Maldonado I* (the same plaintiffs' counsel as in *Maldonado II*) filed a pleading (on behalf of the same plaintiffs as in *Maldonado II*) with the MDL Panel that adopted the allegations in the Motion to Transfer and Consolidate. *See* Exhibit E.

11.

On August 23, 2004, just two days before Ochsner's responsive pleading was due in this Court in *Maldonado I*, Plaintiffs filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1).

12.

Nine days later, Plaintiffs filed *Maldonado II* in state court in a clear attempt to evade federal jurisdiction.

## **FEDERAL QUESTION JURISDICTION**

13.

This Court's subject matter jurisdiction is based upon federal question jurisdiction, pursuant to 28 U.S.C. §§1331, 1340 and 1395dd. Removal of this action to this Court is authorized pursuant to 28 U.S.C. §§1441 and 1446.

14.

The federal question jurisdiction principles relevant to this case were recently summarized by this Court as follows:

> To "arise under" federal law for jurisdictional purposes, federal law must create the cause of action stated in the complaint or the state law action must require a construction of federal law. *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199 (1921). A federal court has jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).
>
> * * *
>
> In determining whether plaintiff's complaint asserts a federal claim, the Court "looks to the substance of the complaint, not the labels used in it." *In re Carter,* 618 F.2d 1093, 1101 (5th Cir. 1980), *cert. denied sub nom, Sheet Metal Workers International Association v. Carter,* 450 U.S. 949, 101 S.Ct. 1419, 67 L.Ed.2d 378 (1981) (*citing Smith v. Local 25, Sheet Metal Workers Int'l Assn.,* 500 F.2d 741, 748-49 n.6 (5th Cir. 1974)). "[U]pon removal, the removal court should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law." *Id. (citing Romick v. Bekins Van & Storage Co.,* 197 F.2d 369 (5th Cir. 1952)).

*In re Indus. Life Ins. Litig.,* 2002 WL 1359748, *1 (E.D. La. June 4, 2002) (Feldman, J.).

15.

On the basis of these principles, federal question jurisdiction exists in *Maldonado II* for numerous reasons. The following are simply examples:

    a.    The Louisiana tax exemptions at the center of the case specifically incorporate and completely depend upon federal law and regulations. First, the Louisiana income tax exemption in La. R.S. 47:287.501, on which Plaintiffs base their

claim (Ex. A at ¶¶ 11, 21 and 52), provides an exemption from the corporate income tax for "[a]n organization described in I.R.C. [Internal Revenue Code] Sections 401(a) or 501 . . . to the extent such organization is exempt from income taxation at federal law. . ." Plaintiffs also base their claim on Louisiana property tax exemptions. Ex. A at ¶¶ 12 and 52. The Louisiana provisions controlling property tax exemptions likewise incorporate and completely depend upon federal law. *See* La. Const. Art. VII, Sec. 21(B)(1); La. R.S. 47:287.502. *Maldonado I* actually pled these federal statutes on the face of the suit. Simple deletion of the federal citations in *Maldonado II* does not change the federal character of the claim.

b.   Plaintiffs' allegations that Ochsner improperly "condition[s] emergency room medical screening and/or treatment" on the "ability to pay" is a poorly disguised claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd. Ex. A at ¶¶ 11, 13, 18, 43, 54, 65, 80 and 88. In *Maldonado I,* Plaintiffs specifically attempted to plead such a claim. Plaintiffs described their EMTALA claim there as follows: "Ochsner would not provide emergency medical screening and/or treatment to the Plaintiffs and the Class unless they were able to pay for such medical care. . ." Ex. B at ¶ 83. In other words, Plaintiffs continue to assert an EMTALA claim.[1]

---

[1] Not surprisingly, Plaintiffs have not pled a claim under the state law equivalent to EMTALA inasmuch as there is no private right of action under the state equivalent.

c.    Additionally, the petition expressly asserts federal claims on its face.  Plaintiffs contend that "the AHA sent out a 'white paper' entitled 'Federal Regulations Hamper Hospitals' Efforts to Assist Patients of Limited Means' to Ochsner" which "falsely advised . . . that Medicare laws and regulations prevented [it] from offering discounts to uninsured patients"; that the "AHA also falsely justifies to the public and governmental entities," including "the United States Department of Health and Human Services," that "Ochsner and its member nonprofit hospitals were required by the Medicare regulations to charge and aggressively collect . . . grossly inflated medical expenses"; and that these representations by the AHA are contrary to "federal regulations."  Exhibit A at ¶¶ 23, 25 and 26.  *See also id.* at ¶¶ 22, 77-78 and 84-85.

d.    The petition asserts various other allegations relating to issues that implicate federal law and regulations, including that Ochsner should charge uninsured individuals the same charges that are charged for Medicare and Medicaid and that Ochsner misrepresents information to the Internal Revenue Service.  *Id.* at ¶¶ 14 and 16.

e.    Federal question jurisdiction is also established in this case by Plaintiffs' actions in the prior suit, including Plaintiffs' explicit admission that the identical allegations raise issues of federal question jurisdiction and Plaintiffs' contention that the prior suit should be consolidated with other cases for MDL treatment in federal court.

## SUPPLEMENTAL JURISDICTION

16.

This Court has supplemental jurisdiction over all of the claims asserted by Plaintiffs in accordance with 28 U.S.C. §§1367 and 1441.

## REMOVAL IS PROPER

17.

Removal is proper here because it has been timely filed.  As noted, Plaintiffs filed the petition herein on September 1, 2004.  The earliest that either defendant was served with the petition was September 7, 2004.  Thus, this Notice of Removal is being filed well within thirty (30) days after the first date of service on any defendant.  Moreover, both defendants join in the removal herein.

18.

The United States District Court for the Eastern District of Louisiana is the federal judicial district embracing the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, where the suit was originally filed.  Venue, therefore, is proper in this district under 28 U.S.C. §§1441(a) and 98(a).

19.

The defendants attach a copy of all process, pleadings, and orders served upon them in accordance with 28 U.S.C. §1446(a) as *en globo* Exhibit A.

20.

Pursuant to 28 U.S.C. §1446(d), undersigned counsel certifies that the Notice of Removal will be served promptly on Plaintiffs and will be filed with the Clerk of Court for the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

Respectfully submitted,

DAVID G. RADLAUER (11058)
THOMAS A. CASEY, JR. (1291)
AIMEE M. QUIRK (27045)
SARAH B. BELTER (28494)
Jones, Walker, Waechter, Poitevent,
     Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone:  504-582-8000
Facsimile:  504-582-8011

Attorneys    for    Defendant,    Ochsner    Clinic
Foundation

JOHN W. BORKOWSKI (20710)
Hogan & Hartson, L.L.P.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  504-593-0824
Facsimile:  504-523-5956

Attorneys    for    Defendant,    American    Hospital
Association

## CERTIFICATE OF SERVICE

I hereby certify that on this 22 day of September, 2004, a true and correct

copy of the above and foregoing pleading has been served upon all counsel of record herein,

either by hand delivery or by U.S. Mail, properly addressed and postage prepaid.

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEEFFERSON

STATE OF LOUISIANA

DOCKET NO:   *611.450*                                      DIVISION "___"

EILEEN MALDONADO, DARRYL SOIGNET, SR., AND CAROL VERLANDER
EISWIRTH ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED

VERSUS

OCHSNER CLINIC FOUNDATION, AMERICAN HOSPITAL ASSOCIATION, and
JOHN DOES 1 THROUGH 10

FILED

SEP  2004

S/ L. ABADIE
DEPUTY CLERK

PETITION FOR DAMAGES

The Plaintiffs, Eileen Maldonado, Darryl Soignet, Sr., and Carol Verlander Eiswirth
hereby file this Petition for Damages seeking monetary damages, injunctive and other equitable
relief against the Defendants and allege the following:

I.

INTRODUCTION

Defendant Ochsner Clinic Foundation has operated free from state taxes because it
promised the government that it would operate as a charity provider of health care for the
uninsured and that it would not engage in business "directly or indirectly, for the benefit of
private interests." In reality, Ochsner does just the opposite: it charges its uninsured patients
significantly more than those who have insurance, generally pursuing the poor or uninsured
relentlessly by aggressive and humiliating collection techniques. At the same time, through
discounts to private insurance companies, its affiliated health plan and subsidies to for-profit
physician groups it favors, Ochsner is rampantly violating the state prohibition against
profiteering by "private interests." On information and belief, defendant Ochsner's clinics have
disbursed millions of tax free dollars to its doctors in the form of bonuses.

Ochsner has thereby amassed and hoarded millions of dollars in cash and marketable
securities, which otherwise should be available to provide charity care to the uninsured who were
contemplated by the tax exemption. Moreover, enormous property and revenues have been
insulated from taxation. Defendant Ochsner maintains and receives tax-free revenue from hotels,

fitness centers, apartments and other ventures unrelated to Ochsner's purported charitable purpose.

The Defendant American Hospital Association ("AHA"), is the national trade association for the nonprofit hospital industry and serves as the representative for Defendant Ochsner and its nonprofit hospital members.  According to its website, the AHA "ensures that members' perspectives and needs are heard and addressed in national health policy development, legislative and regulatory debates, and judicial matters."

This Petition asks the Court to certify a Class of the intended beneficiaries of Ochsner's commitment to the government, more fully defined below, and to require Ochsner to honor the commitments for which it received its unique freedom from taxation.

## II.
## PARTIES

### 1.

Plaintiff Eileen Maldonado is an adult resident citizen of Jefferson, Louisiana, residing at 557 Terrace, Jefferson, Louisiana 70121.

### 2.

Plaintiff Darryl Soignet, Sr. is an adult resident citizen of Kenner, Louisiana residing at 2616 Gay Lynn Drive, Kenner, Louisiana 70065.

### 3.

Plaintiff Carol Verlander Eiswirth is an adult resident citizen of Metairie, Louisiana residing at 101 West William David Parkway, Metairie, Louisiana 70005.

### 4.

Defendant Ochsner Clinic Foundation ("Ochsner") is a Louisiana not-for-profit corporation with its principal place of business and registered office in Jefferson Parish, Louisiana.

### 5.

Defendant American Hospital Association ("AHA") is a national trade association for the non-profit hospital industry, and serves as the representative for defendant Ochsner and its other non-profit hospital members.  The American Hospital Association is incorporated in the State of Illinois as an Illinois not-for-profit corporation.

2

6.

The various Defendants, designated John Does 1 through 10, are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include but are not limited to agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-conspirators, joint adventures, partners, stockholders of the named Defendants and/or any other persons who may be liable to the Plaintiff for the claims asserted herein.

### III.
### FACTS

7.

Defendant Ochsner represents itself as a New Orleans area based, tax exempt, nonprofit hospital system that consists of a 478–bed hospital located in Jefferson Parish, twenty-four clinics located throughout Louisiana and the State's largest multi-specialty group practice. Ochsner indirectly owns the state's largest health maintenance organization. Ochsner's is domiciled in Jefferson Parish, Louisiana.

8.

Defendant Ochsner is one of the largest healthcare providers in the Metropolitan New Orleans area. It has the second highest market share in the New Orleans region, with an 11.6% market share in 2002. Defendant Ochsner currently maintains one hospital in New Orleans and numerous clinics in New Orleans and surrounding municipalities.

9.

In 2002, Ochsner generated over $1 billion in patient revenue. At the close of 2002, it had nearly $500 million in cash and investments.

10.

Defendant Ochsner entered into express and/or implied Agreements with the State of Louisiana, Jefferson Parish and other parishes to provide mutually affordable medical care to all of its patients in return for substantial tax exemptions. An express and/or implied contractual relationship was thereby created between Defendant Ochsner and the State of Louisiana, Jefferson Parish and other parishes to accomplish such purpose. Defendant Ochsner's uninsured patients during the period of September 1, 1994 to September 1, 2004, were the express and/or implied intended third party beneficiaries of such Agreements.

3

11.

Defendant Ochsner has applied for and has received state income and franchise tax exemptions as a purported "charitable" institution under LSA–R.S. 47: 287.501 and 47:608. Under these statutes, Defendant Ochsner is required to operate "exclusively" in furtherance of a charitable purpose, with no part of its operations attributable directly or indirectly to any noncharitable commercial purpose and with no part of its earnings inuring to the benefit of any private individual or entity. By accepting this favorable tax exemption, Defendant Ochsner explicitly and/or implicitly agreed to the following: to operate exclusively for charitable purposes; to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its uninsured patients; not to charge its uninsured patients the highest and full undiscounted cost for medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection practices.

12.

Defendant Ochsner has applied for and has also received property tax exemptions from the State of Louisiana, Jefferson Parish, and other parishes. By accepting these favorable tax exemptions, Defendant Ochsner explicitly and/or implicitly agreed: to operate for charitable purposes; to provide mutually affordable medical care to all of its uninsured patients; not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts.

13.

Despite its favorable tax exempt status and its substantial net revenues and asset reserves in the millions of dollars, Defendant Ochsner has breached its Agreements with the State of Louisiana, Jefferson Parish and other parishes by: failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care; charging its uninsured patients the highest and full undiscounted cost for medical care at grossly inflated rates

4

from the actual cost of providing such services; charging its uninsured patients rates for medical care in excess of the rate charged to persons with insurance; providing discounted medical care to private insurance companies; providing discounted medical care to its employees and entities connected to its Board of Directors; allowing noncharitable for-profit physician groups and service providers to derive profit from its tax exempt hospitals; and by engaging in aggressive efforts to collect such medical debt from its uninsured patients through abusive, harassing, and humiliating collection practices.  Defendant Ochsner's uninsured patients have therefore not received the benefit of the Agreements between Defendant Ochsner and the State of Louisiana, Jefferson Parish and other parishes.  These uninsured patients primarily consist of the working class who do not qualify for Medicaid or charity care but cannot afford private health insurance and/or cannot obtain health insurance through their employers.

14.

Defendant Ochsner sets its charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service.  While Defendant Ochsner gives its health plan members, private insurance companies and governmental third party payers like Medicare and Medicaid large discounts off this gross or "sticker price," most of its uninsured patients are charged 100% of the full sticker price, which is two to three times more than Ochsner charges its insured patients for the same service.  Furthermore, Defendant Ochsner requires a deposit from its uninsured patients before providing medical care at its inflated rates.

15.

Defendant Ochsner realizes substantial revenues from this discriminatory charging practice.  On information and belief, Defendant Ochsner also realizes the highest profit per discharge on its uninsured patients who pay such grossly inflated prices.

16.

Despite sizeable net revenues and asset reserves in the hundreds of millions of dollars, Defendant Ochsner provides little to no charity care to its uninsured patients.  Defendant Ochsner's level of charity care constitutes only a small amount of its gross charges.  According to reports filed with the Internal Revenue Service for 2002, less than 1/10th of 1% of Ochsner's medical services were classified as "charitable" despite the fact that one hundred percent of Ochsner's income and property were shielded from taxation.  Defendant Ochsner has never provided an amount of uncompensated care equal to its market share.  Notwithstanding its tax

5

exemptions, on information and belief Defendant Ochsner provides less charity care than many of it's for profit hospital competitors.

17.

On information and belief, Defendant Ochsner uses inappropriate accounting methods to grossly distort the small amount of charity care it does provide to its uninsured patients. Defendant Ochsner reports its amount of charity care as the amount of gross charges – which are grossly inflated – rather than the cost of actually providing the service.

18.

On information and belief, before Defendant Ochsner admits any patient, including its uninsured patients, into its hospitals and/or emergency rooms for emergency medical care, it requires its patients to sign a form contract promising to pay Defendant Ochsner in full for unspecified and undocumented charges for medical care that are set by Defendant Ochsner in its sole discretion. Defendant Ochsner will not admit patients into its emergency rooms for emergency medical care unless and until that patient agrees to provide a deposit and agrees to pay Ochsner in full for such unspecified and undiscounted charges.

19.

Not only does Defendant Ochsner charge its uninsured patients the highest rates for medical care, which they cannot afford to pay, it has also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts.

20.

While Defendant Ochsner charges its uninsured patients the full undiscounted cost for medical care, upon information and belief, it provides substantial discounts off the gross charges to its employees and members of its affiliated health plan. Ochsner also provides substantial discounts to non-charitable for-profit private insurance companies. These discounts are in direct violation of Defendant Ochsner's obligations as a tax-exempt organization.

21.

Defendant Ochsner also allows numerous outside for-profit physician groups and service providers to use its tax-exempt hospital to derive a profit. These for-profit physician groups and service providers practice in Ochsner's taxpayer-subsidized hospital and clinics and then bill patients for work done at these tax-exempt hospitals. These for-profit physician groups and

service providers are non-charitable entities which do not have a charitable mission or purpose. By allowing noncharitable for-profit entities with no charitable mission to derive a profit from its charitable tax-exempt hospitals, Defendant Ochsner has not operated actually and exclusively for charitable purposes in violation of its obligations under LSA-R.S. 47:287.501, which prohibits charitable tax-exempt property to be used for noncharitable purposes. Furthermore, Defendant Ochsner uses its tax-exempt status to shield the income earned from its clinics, apartments, fitness centers and other non-charitable ventures from state taxation.

22.

AHA, through internal memos called "white papers" and other publications, provides substantial assistance and guidance to Ochsner and the nonprofit hospital industry on its billing and collection practices for uninsured patients, including publications such as "Seven Strategies to Improve Your Bottom Line." In these publications, the AHA encourages Ochsner and its nonprofit hospital members to inflate its chargemaster prices, which only Ochsner's insured patients are charged. These inflated chargemaster prices have the intended effect of increasing Ochsner's outlier payment reimbursements under the DSH and Medicare reimbursement programs.

23.

On December 17, 2003, the AHA sent out a "white paper" entitled "Federal Regulations Hamper Hospitals' Efforts to Assist Patients of Limited Means" to Ochsner and its member nonprofit hospitals that falsely advised such hospitals that the Medicare laws and regulations prevented them from offering discounts to uninsured patients and required them to aggressively collect medical debt from the uninsured through collection practices.

24.

The AHA actively conceals and misrepresents from the government and regulatory agencies the amount of charity care provided by Ochsner and its nonprofit hospitals to the uninsured. According to a June 21, 2004, article in Modern Healthcare entitled "Well Kept Secret," "the AHA collects charity care data [from its members] in its annual hospital survey but does not report the total. Instead, it reports uncompensated care which includes bad debt as well as charity care."

7

25.

The AHA also falsely justifies to the public and governmental entities the reasoning for the outrageous billing and collection practices employed by Ochsner and its nonprofit hospital members. In a December 16, 2003, letter to the United States Department of Health and Human Services Secretary Tommy Thompson, the AHA, while admitting that Ochsner and its nonprofit hospital members charge its uninsured patients the full price for medical care, falsely represented to the Secretary that Ochsner and its member nonprofit hospitals were required by the Medicare regulations to charge and aggressively collect such grossly inflated medical expenses.

26.

On February 19, 2004, Secretary Thompson, as the ultimate governmental authority on the applicable Medicare regulations, exposed the falsity of the AHA's prior advice and representations, stating that the Medicare regulations have never required nonprofit hospitals to charge its uninsured patients the highest price for medical care nor prevented such hospitals from offering discounts to its uninsured patients. Moreover, on June 24, 2004, in testimony before the House of Representatives Energy and Commerce Subcommittee on Oversight and Investigations, the Director of the Center for Medicare and Medicaid Services testified that Medicare billing requirements did not prevent discounting medical care to uninsured patients and did not require aggressive collection efforts toward the uninsured. Similar testimony was provided by the Chief Counsel of the Office of Inspector General of the Department of Health and Human Services, who testified that the federal regulations were clear and that there was no justification for interpreting such regulations as preventing discounts to the uninsured.

IV.

**PLAINTIFFS**

27.

Ms. Maldonado was assaulted and injured on September 7, 2003 and required immediate medical attention. The ambulance service called to the scene of the incident delivered Ms. Maldonado to Defendant Ochsner's hospital for medical treatment. Defendant Ochsner treated Ms. Maldonado for a punctured lung and other injuries. While Ms. Maldonado was still being treated by Defendant Ochsner for her injuries, employees of Defendant Ochsner repeatedly questioned Ms. Maldonado about her employment status, medical insurance and ability to pay Ochsner's charges. Ms. Maldonado was without medical insurance at the time of her treatment.

28.

Shortly after receiving medical treatment from Defendant Ochsner, Ms. Maldonado
began to receive bills from Defendant Ochsner and its doctors. Despite being aware of Ms.
Maldonado's indigent status, Defendant Ochsner charged Ms. Maldonado its highest rates for the
medical services provided to Ms. Maldonado. The charges for services provided to Ms.
Maldonado totaled approximately $20,000. Defendant Ochsner did not offer Ms. Maldonado
any of the discounts routinely given to patients covered by third-party insurance. Moreover,
Defendant Ochsner did not offer Ms. Maldonado any charity care.

29.

Rather than providing Ms. Maldonado with discounts available to patients with
insurance, Defendant Ochsner continued to send invoices to Ms. Maldonado reflecting
Defendant Ochsner's inflated charges for services. Within four months of being discharged from
the hospital, Ms. Maldonado began receiving demands from a collection agency for payment for
services she received while at Defendant Ochsner's hospital.

30.

Mr. Soignet required emergency hospitalization for treatment of a stone blocking
gallbladder and pancreatic ducts. Mr. Soignet had recently been laid off from employment and
was uninsured. At age 64, Mr. Soignet was not yet qualified for Medicare or Medicaid.

31.

Mr. Soignet was taken to Ochsner Hospital for treatment. Doctors at Defendant Ochsner
treated inflammation caused by the stone and determined that Mr. Soignet's gallbladder required
removal. Allegedly, no doctor was available to perform the procedure at that time. Mr. Soignet
was then discharged from the hospital and told to make an appointment at a later time for
gallbladder surgery. Mr. Soignet was charged over $31,000 for medical services despite the fact
that he had no health insurance and could not afford to pay the full amount charged.

32.

Mr. Soignet subsequently attempted to make arrangements for gallbladder surgery at
defendant Ochsner's hospital. Defendant Ochsner refused to perform the necessary surgery until
Mr. Soignet wrote a check for $1,200 to the hospital and obtained a high interest rate loan to pay
Ochsner an additional $5,500. Rather than offering Mr. Soignet any discount or charity care,

Defendant Ochsner assisted Mr. Soignet in obtaining the high interest financing while Mr. Soignet was at Defendant Ochsner's hospital.

33.

Mr. Soignet understood that the cost of the surgery would be approximately $6,700. Defendant Ochsner billed Mr. Soignet over $13,000 for the procedure.

34.

Mr. Soignet made monthly payments on the approximately $31,000 in charges for the initial hospital treatment. Defendant Ochsner was aware of Mr. Soignet's monthly payments and suggested to Mr. Soignet's wife that she continue to make monthly payments on the outstanding medical bills. Nevertheless, Defendant Ochsner turned Mr. Soignet's account over to a collection agency. Despite being aware of Mr. Soignet's indigent status, Defendant Ochsner charged Mr. Soignet its highest rates for medical services provided. Defendant Ochsner did not offer Mr. Soignet any of the discounts routinely given to patients covered by insurance, nor did it offer Mr. Soignet any charity care.

35.

In November 2003, Ms. Eiswirth was diagnosed by Ochsner doctors with recurrence of breast cancer in her hip and pelvis. Defendant Ochsner performed a bone scan, CAT scan, MRI exam and radiation treatments on Ms. Eiswirth from November 2003 through December 2003. Defendant Ochsner charged Ms. Eiswirth, who was without health insurance, the undiscounted price of approximately $7,500 for the medical services performed. Defendant Ochsner agreed to allow Ms. Eiswirth to pay for the medical services in three installments.

36.

In February 2004, while waiting to give blood work at Ochsner's Clinic and after having made the first of the three installment payments, Ms. Eiswirth was rudely chastised by a representative of Ochsner for failing to pay her medical bills. Furthermore, the representative of Defendant Ochsner informed Ms. Eiswirth that she would not be provided any additional medical services by Defendant Ochsner until Ms. Eiswirth paid the entire balance of her medical charges and deposited an additional $5,000 to Defendant Ochsner for any additional medical services that may be necessary. A Defendant Ochsner representative also threatened to turn Ms. Eiswirth's account over to a collection agency. Defendant Ochsner thereafter blocked Ms.

Eiswirth's account and refused to allow her to make necessary appointments requested by her doctors.

37.

Ms. Eiswirth, who lives on an annual income of approximately $19,000, transferred money from her savings account to pay Ochsner's bills so that she could resume her medical treatment.  Even after having paid Defendant Ochsner's bill in full, Defendant Ochsner refused to remove the block from Ms. Eiswirth's account for some time until Ms. Eiswirth finally persuaded Defendant Ochsner to open her account and allow her access to her doctors.

38.

Defendant Ochsner did not offer Ms. Eiswirth any of the discounts routinely given to patients covered by insurance, nor did it offer Ms. Eiswirth any charity care.

### V.
### CLASS ACTION ALLEGATIONS

39.

Plaintiffs bring this class pursuant to Louisiana Rules of Civil Procedure article 591, et seq. on behalf of a Class consisting of all persons who received any form of healthcare treatment and were charged an undiscounted amount for the services at Ochsner from September 1, 1994 through the date of commencement of class notice or entry of judgment and who were uninsured at the time of treatment.  Excluded from the Class are defendants, defendants' officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

40.

Plaintiffs Eileen Maldonado, Darryl Soignet, Sr. and Carol Verlander Eiswirth, are members of the Class they seek to represent.

41.

The Class consists of thousands of individuals and, therefore, is so numerous that joinder of all members is impracticable.

42.

Plaintiffs' claims are typical of the claims of the Class because they and all of the Class sustained damages as a result of Defendant Ochsner's unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

11

43.

There are numerous questions of law and fact common to the Class which predominates over any questions affecting only individual class members, including:

(a)     whether Defendant Ochsner entered into express and/or implied Agreements with the State of Louisiana, Jefferson Parish and other parishes that in return for substantial tax exemptions, it would: operate for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; and not to seek to collect outstanding medical debt from the Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(b)     whether Defendant Ochsner breached said Agreements with the State of Louisiana, Jefferson Parish and other parishes by: failing to operate for charitable purposes; failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiffs and the Class; and by seeking to collect outstanding medical debt from the Plaintiffs and the Class through aggressive, abusive, and humiliating collection practices;

(c)     whether the Plaintiffs and the Class are express and/or implied intended third party beneficiaries to said Agreements between Defendant Ochsner and the State of Louisiana, Jefferson Parish and other parishes;

(d)     whether Defendant Ochsner charged the Plaintiffs and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax exempt status;

(e)     whether Defendant Ochsner charged the Plaintiffs and the Class higher amounts for medical care than its insured patients in violation of its charitable, nonprofit, tax exempt status;

(f)     whether Defendant Ochsner profited by charging the Plaintiffs and the Class the highest rates for medical care;

(g)   whether Defendant Ochsner charged the Plaintiffs and the Class unreasonable charges for medical care;

(h)   whether Defendant Ochsner conditioned emergency room medical screening and/or treatment to the Plaintiffs and the Class on their ability to pay or financial guarantees to pay for such medical care;

(i)   whether Defendant Ochsner should have utilized its sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiffs and the Class pursuant to its charitable, nonprofit, tax exempt status;

(j)   whether Defendant Ochsner has utilized aggressive, unfair, abusive, and harassing collection practices to collect medical payments from the Plaintiffs and the Class in violation of its charitable, nonprofit, tax exempt status;

(k)   whether Defendant Ochsner violated the anti-inurement provision under LSA-R.S. 47:287.501, 47:608 and the Louisiana Constitution by providing substantial discounts in medical care to private insurers, its Board of Directors, and entities affiliated with Defendant Ochsner;

(l)   whether Defendant Ochsner failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entitles to derive a profit from its use of its tax-exempt hospitals in violation of LSA-R.S. 47:287.501, 47:608 and the Louisiana Constitution;

(m)   whether Defendant Ochsner breached its duty of good faith and fair dealing to the Plaintiffs and the Class;

(n)   whether a charitable trust was created for the benefit of the Plaintiffs and the Class;

(o)   whether Defendant Ochsner's actions as alleged in the Petition violated the Louisiana Unfair Trade Practices and Consumer Protection Law;

(p)   whether Defendant Ochsner has been unjustly enriched at the Plaintiffs' and the Class' expense;

(q)   whether the AHA conspired with Ochsner to breach its contracts with the State of Louisiana, Jefferson Parish and other parishes;

13

(r)     whether the AHA aided and abetted Ochsner in breaching its contracts with the State of Louisiana, Jefferson Parish and other parishes.

(s)     whether Defendant Ochsner should be enjoined from continuing its unfair, discriminatory, and abusive conduct; and

(t)     whether Defendants are liable to the Plaintiffs and the Class in this action, as alleged in the Petition.

44.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

45.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in complex class actions, and mass tort and products liability litigation. Counsel is committed to the vigorous prosecution of this action.

46.

The prosecution of separate actions by the Plaintiffs and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

47.

This Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

48.

The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights. In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

49.

Class certification pursuant to Article 591 et seq. is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

50.

Class certification is also appropriate pursuant to Article 591 et seq. because Defendant Ochsner has acted and/or refused to act on grounds generally applicable to the Plaintiffs and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## VI.
## CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

51.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 50 of the Petition.

52.

Defendant Ochsner, as a purported charitable entity under LSA-R.S. 47:287.501, 47:608 and the Louisiana Constitution Art. VII, Sec. 21, entered into an express and/or implied Agreement with the State of Louisiana that in return for a substantial income, franchise and property tax exemptions valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; not to pursue outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

53.

The Plaintiffs and the Class are the express and/or implied intended third party beneficiaries of Defendant Ochsner's Agreements with the State of Louisiana, Jefferson Parish and other parishes.

54.

Defendant Ochsner breached the above-mentioned Agreements with the State of Louisiana, Jefferson Parish and other parishes by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class excessive, undiscounted cost of medical care; charging the Plaintiffs and the Class significantly more than its insured patients for the same medical services;

15

failing to use its net assets and revenues in the millions of dollars to provide mutually affordable medical care to the Plaintiffs and the Class; utilizing aggressive, abusive and humiliating collection practices to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; providing substantial discounts off the gross charges to private insurance companies, its Board of Directors,  and entities affiliated with Defendant Ochsner; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.  As a result of such conduct, the Plaintiffs and the Class have not received the benefit of Defendant Ochsner's Agreements with the State of Louisiana, Jefferson Parish and other parishes.  Such conduct is also contrary to the Defendant Ochsner's purported charitable purpose and its nonprofit status.

55.

The aforementioned breaches of contract have proximately caused the Plaintiffs and the Class economic injury and other damages.

COUNT TWO
BREACH OF CONTRACT

56.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 55 of the Petition.

57.

Alternatively, upon admission, the Plaintiffs and the Class entered into express form contracts with Defendant Ochsner whereby the Plaintiffs and the Class were required to agree to pay unspecified and undocumented charges for medical care set by Defendant Ochsner in its sole discretion.  Imputed in these contracts is the express and/or implied contractual obligation by Defendant Ochsner that it would charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

58.

Similarly, by accepting and admitting the Plaintiffs and the Class into its hospitals for medical care, Defendant Ochsner undertook an express and/or implied contractual obligation to charge the Plaintiffs and the Class no more than a fair and reasonable charge for such medical care.

16

59.

Defendant Ochsner breached its contractual obligations under these form contracts by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care. These charges are unfair, unreasonable, and bear no relation to the actual cost of providing such services.

60.

The aforementioned breaches of contract have proximately caused the Plaintiffs and the Class economic injury and other damages.

COUNT THREE

BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

61.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 60 of the Petition.

62.

Defendant Ochsner's conduct as alleged above also constitutes a breach of its duty of good faith and fair dealing.

63.

The Plaintiffs and the Class are express and/or implied intended third party beneficiaries of Agreements between the State of Louisiana, Jefferson Parish and other parishes, wherein Defendant Ochsner agreed to provide mutually affordable medical care to the Plaintiffs and the Class in return for substantial state and local tax exemptions.

64.

Alternatively, the Plaintiffs and the Class entered into an express and/or implied contractual relationship with Defendant Ochsner wherein each Plaintiff and Class member was admitted to Ochsner's facilities for the purpose of receiving medical care.

65.

Defendant Ochsner breached its duty of good faith and fair dealing to the Plaintiffs and the Class by: failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such care; charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than it charged its insured patients for the same services; charging

the Plaintiffs and the Class unreasonable charges for medical care; utilizing aggressive, abusive, and harassing collection practices to collect such outstanding grossly inflated medical debt from the Plaintiffs and the Class; providing substantial discounts off the gross charges to its Board of Directors and entities connected to the Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

66.

Such unfair and bad faith conduct by Defendant Ochsner proximately caused economic injury and other damages to the Plaintiffs and the Class.

### COUNT FOUR

### LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

67.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 66 of the Petition.

68.

The Louisiana Unfair Trade and Practices and Consumer Protection Law, La. R.S. 51:1401 et seq. was enacted to prohibit and protect Louisiana citizens from deceptive, fraudulent and unfair conduct.

69.

As alleged above, Defendant Ochsner's conduct in charging the Plaintiffs and the Class the highest and full uncompensated cost for medical care and its charging the Plaintiffs and the Class a higher amount than its insured patients for the same medical services, despite its charitable, nonprofit, tax exempt status, is in violation of the Louisiana Unfair Trade and Practices and Consumer Protection Law because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive. Such conduct is against public policy and has caused substantial economic injury to the Plaintiffs and the Class.

70.

Moreover, as alleged above, Defendant Ochsner's aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt from the Plaintiffs and the Class, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive. Such conduct is also against public policy and has caused

substantial economic injury to the Plaintiffs and the Class, including but not limited to bankruptcy and/or financial ruin.

71.

The aforementioned violations of the Louisiana Unfair Trade and Practices and Consumer Protection Law have caused the Plaintiffs and the Class economic injury and other damages.

## COUNT FIVE
### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

72.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 71 of the Petition.

73.

Defendant Ochsner has been unjustly enriched at the Plaintiffs' and the Class' expense. As alleged above, Defendant Ochsner has failed to provide mutually affordable medical care to the Plaintiffs and the Class despite receiving millions of dollars in state and local tax exemptions for such purpose. Moreover, contrary to its charitable, nonprofit, tax exempt status, Defendant Ochsner has failed to utilize its substantial net assets and revenues, valued in the hundreds of millions of dollars, to provide mutually affordable medical care to the Plaintiffs and the Class. Defendant Ochsner has also realized profits in the millions of dollars by charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiffs and the Class a higher amount for medical care than its insured patients.

74.

The Plaintiffs and the Class have suffered severe economic injury and other damages as a proximate consequence of Defendant Ochsner's unjust enrichment.

75.

As a result of Defendant Ochsner's breach of contract along with its wrongful, unfair, discriminatory, abusive, and noncharitable conduct, it is in possession of tax savings, profits and other assets that it in good conscience and equity should not be entitled to retain. The Plaintiffs and the Class are therefore entitled to all damages resulting from Defendant Ochsner's unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of Defendant Ochsner's state and local tax exemption savings. The Plaintiffs and the Class are also

entitled to the imposition of a constructive trust on all profits Defendant Ochsner wrongfully obtained by charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care. The Plaintiffs and the Class are further entitled to the imposition of a constructive trust on the difference between the amount Defendant Ochsner has charged the Plaintiffs and the Class and the amount it has charged its insured patients. Lastly, the Plaintiffs and the Class are, therefore, entitled to the imposition of a constructive trust on Defendant Ochsner's net assets and revenues in an amount sufficient to provide to the Plaintiffs and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

## COUNT SIX
### CIVIL CONSPIRACY/CONCERT OF ACTION

76.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 75 of the Petition.

77.

The AHA advised Ochsner and its nonprofit hospital members on its billing and collection practices concerning the uninsured through various internal memos and/or "white papers" for the purpose of increasing Ochsner's profits and government reimbursements. In these internal memos, such as the December 17, 2003, memo entitled "Federal Regulations Hamper Hospitals Efforts to Assist Patients of Limited Means," the AHA advised Ochsner and its member nonprofit hospitals that they were prevented from providing discounts to the Plaintiffs and the Class and were required to subject Plaintiffs and the Class to abusive collection practices. The AHA, through these internal memos, conspired and acted in concert with Ochsner to charge the Plaintiffs and the Class the highest undiscounted cost for medical care and aggressively collect such inflated medical debt.

78.

Moreover, the AHA actively conspired and acted in concert with Ochsner to wrongfully retain its tax exempt status and breach Ochsner's contracts with the State of Louisiana, Jefferson Parish and other parishes, the Plaintiffs and the Class by: advising Ochsner that it charge and collect undiscounted rates for medical care from the Plaintiffs and the Class; falsely representing to Secretary Thompson that Ochsner was required to charge and collect undiscounted rates for

medical care from the Plaintiffs and the Class; and concealing and misrepresenting the true amount of charity care Ochsner provided to the Plaintiffs and the Class.

79.

Through such acts, the AHA also conspired and acted in concert with Ochsner to violate the Louisiana Unfair Trade Practices and Consumer Protection Law and to breach Ochsner's duty of good faith and fair dealing to the Plaintiffs and the Class.

80.

Such advice, assistance, false justification, concealments and misrepresentations have allowed and enabled Ochsner to: fail to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charge the Plaintiffs and the Class the highest and full undiscounted cost of medical care; fail to provide mutually affordable medical care to the Plaintiffs and the Class; charge the Plaintiffs and the Class substantially more than its insured patients for the same medical services; fail to use its net assets and reserves in the billions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engage in aggressive, abusive, and harassing collection practices to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

81.

Such acts of conspiracy and concert in action by the AHA have proximately caused Ochsner to be unjustly enriched at the Plaintiffs' and Class' expense and have also proximately caused the Plaintiffs and the Class economic injury and other damages.

COUNT SEVEN

AIDING AND ABETTING

82.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 81 of the Petition.

83.

The AHA, through its internal memos and other advisory assistance, aided and abetted Ochsner in charging the Plaintiffs and the Class the full undiscounted cost for medical care and in seeking to collect such grossly inflated medical debt from the Plaintiffs and the Class through abusive collection practices.

21

84.

The AHA aided and abetted Ochsner's breach of its tax exempt contracts with the State of Louisiana, Jefferson Parish and other parishes, the Plaintiffs and the Class by advising Ochsner that federal regulations prevented it from providing discounts to the Plaintiffs and the Class and required it to aggressively collect such grossly inflated medical debt from the Plaintiffs and the Class through collection practices.

85.

The AHA also aided and abetted Ochsner's breaches of contract by falsely justifying and representing to Secretary Thompson and other government entities that the Medicare regulations prevented Ochsner from providing discounts to the Plaintiffs and the Class and required Ochsner to aggressively collect such grossly inflated medical debt from the Plaintiffs and the Class through collection.

86.

The AHA further aided and abetted Ochsner's breaches of contract by falsely representing and concealing the true cost of charity care provided by Ochsner to the Plaintiffs and the Class.

87.

Through these acts, the AHA also aided and abetted Ochsner's violations of the Louisiana Unfair Trade Practices and Consumer Protection Law and Ochsner's breach of its duty of good faith and fair dealing toward the Plaintiffs and the Class.

88.

Such substantial assistance by the AHA allowed and enabled Ochsner to: fail to provide emergency room medical care to the Plaintiffs and the Class without regard for their ability to pay for such medical care; charge the Plaintiffs and the Class the highest and full undiscounted cost of medical care; fail to provide mutually affordable medical care to the Plaintiffs and the Class; charge the Plaintiffs and the Class substantially more than its insured patients for the same medical services; fail to use its net assets and revenues in the billions of dollars to provide mutually affordable health care to the Plaintiffs and the Class; and engage in aggressive, abusive, and harassing collection practices to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class.

22

89.

The AHA's substantial assistance has proximately caused Ochsner to be unjustly enriched at the Plaintiffs' and Class' expense and has also proximately caused the Plaintiffs and the Class economic injury and other damages.

**COUNT EIGHT**
**INJUNCTIVE/DECLARATORY RELIEF**

90.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 89 of the Petition.

91.

As a result of Defendant Ochsner's wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiffs and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

92.

Accordingly, Plaintiffs and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, ordering Defendant Ochsner to cease and desist: charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices to collect outstanding grossly inflated medical debt from the Plaintiffs and the Class.

93.

Plaintiffs and the Class also seek a prospective Order from the Court, requiring Defendant Ochsner: to provide mutually affordable medical care to the Plaintiffs and the Class; to charge the Plaintiffs and the Class no more for medical services than it charges its insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiffs and the Class until its has complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiffs and the Class through a graduated payment plan or other means.

VII.

**DAMAGES**

94.

Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in paragraphs 1 through 98 of the Petition.

95.

As a direct and proximate result of Defendant Ochsner's breach of contract, breach of duty of good faith and fair dealing, violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, and unjust enrichment, the Plaintiffs and the Class have suffered economic injury and damages.

96.

As a direct and proximate result of the AHA's conduct, the plaintiffs and the Class have suffered economic injury and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this matter be tried and judgment be entered against Ochsner and the AHA for:

1)   all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

2)    a constructive trust to be imposed on: Defendant Ochsner's state and  local tax exempt savings; Ochsner's profits obtained from charging the Plaintiffs and the Class the highest and full undiscounted cost for medical care; and Ochsner's net assets and revenues in an amount sufficient to provide the Plaintiffs and the Class mutually affordable medical care; and

3)   injunctive and/or declaratory relief.

Respectfully submitted, this the 1st day of September 2004.

ORECK, BRADLEY, CRIGHTON,
ADAMS& CHASE

1100 Poydras Street, Suite 1440
New Orleans, Louisiana  70163
Telephone:  (504)525-8001
Facsimile:  (504)525-8018

BY:  _____

ANDRE BURVANT (La. #23982)

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

DEPUTY CLERK

24TH. JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

RICHARD F. SCRUGGS, MSB # 6582
SIDNEY A. BACKSTROM, LAB #23632
ZACH SCRUGGS, MSB # 100011
**SCRUGGS LAWS FIRM**
120-A Courthouse Square
P.O. Box 1136
Oxford, MS 38655
Telephone: (662)281-1212
Facsimile: (662)281-1312

<u>**PLEASE SERVE**</u>

**OCHSNER CLINIC FOUNDATION**
By and through its Agent:

B. C. BRANNON
1514 JEFFERSON HIGHWAY
~~NEW ORLEANS~~, LA 70121
~~JEFFERSON~~

**AMERICAN HOSPITAL ASSOCIATION**          Long Arm Service
By and through its Agent

MR. JAMES HENDERSON
ONE NORTH FRANKLIN STREET
SUITE 2700
CHICAGO, ILLINOIS 60606

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED